**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ARASHI VISION INC. (D/B/A INSTA360) and YILU GAOFEI (SHENZHEN) TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 2:26-cv-00467 JURY TRIAL DEMANDED |
| SZ DJI TECHNOLOGY CO., LTD., SZ DJI OSMO TECHNOLOGY CO., LTD., IFLIGHT TECHNOLOGY COMPANY LIMITED, and DJI EUROPE B.V., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Arashi Vision Inc. (d/b/a Insta360) and Yilu Gaofei (Shenzhen) Technology

Co., Ltd. (collectively, "Plaintiffs" or "Insta360"), by and through their undersigned counsel, file

this complaint under 35 U.S.C. § 271 for patent infringement against SZ DJI Technology Co.,

Ltd., SZ DJI Osmo Technology Co., Ltd., iFlight Technology Company Limited, and DJI Europe

B.V. (collectively, "Defendants" or "DJI"), and allege as follows.

**NATURE OF THE ACTION**

1.       This is a civil action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285, to

obtain damages and injunctive relief resulting from DJI's unauthorized actions of making,

having made, using, selling, offering for sale, and/or importing into the United States products

that infringe one or more claims of U.S. Patent Nos. 8,938,161 (the "'161 Patent"), 8,908,090

(the "'090 Patent"), and 9,154,910 (the "'910 Patent") (collectively, the "Asserted Patents").

2.      Insta360 is an award-winning innovator in the field of cameras and imaging technology.  Founded in 2015, Insta360 has grown into one of the most recognized companies in the consumer electronics industry, developing, manufacturing, and selling cutting-edge imaging products—including 360-degree cameras, action cameras, and computational photography systems—worldwide.  Insta360's products, including the Insta360 X series, Ace Pro series, and ONE RS series, are trusted by millions of users ranging from professional content creators to everyday consumers.  Insta360's mission is simple, but critically important: to help people better capture and share their lives.

3.      Insta360's technological achievements have been recognized through numerous prestigious industry awards, including multiple CES Innovation Awards, Red Dot Design Awards, iF Design Awards, and recognition by TIME Magazine as one of the Best Inventions of the Year.  Insta360 cameras have also been used aboard the International Space Station by NASA astronauts to capture immersive 360-degree video, underscoring the performance and reliability of Insta360's technology in demanding environments.  These accolades and collaborations reflect the company's commitment to pushing the boundaries of camera technology.

4.      Insta360 has invested substantial resources in advancing core imaging technologies, including camera stabilization, gimbal control, motion imaging, and location-based imaging systems.  As part of this investment, Plaintiffs are the owners by assignment of the Asserted Patents, which cover foundational inventions in actively stabilized camera-gimbal control and terminal location technology.

5.      DJI has incorporated Insta360's patented technology into its Accused Products without authorization.  DJI's unauthorized use of the patented technology has caused and continues to cause direct harm to Insta360's business, market share, and the value of its intellectual property rights.

6.      On information and belief, DJI had knowledge not only of the '161 Patent and the '090 Patent, but also of its infringement thereof, well before the filing of this action.  DJI

COMPLAINT

repeatedly cited these exact patents in Information Disclosure Statements filed during prosecution of DJI's own U.S. patent applications.  For example, on August 31, 2017, DJI cited both the '161 and '090 patents in an Information Disclosure Statement ("IDS") filed during prosecution of U.S. Patent Application No. 15/487,172, entitled "Stabilizing Platform."  On November 13, 2017, DJI cited these two patents again in an IDS filed during prosecution of U.S. Patent Application No. 14/670,107, entitled "Remote Control Method and Terminal."  And on May 21, 2019, DJI cited these two patents again in an IDS filed during prosecution of U.S. Patent Application No. 16/418,724, entitled "Apparatus and Methods for Stabilization and Vibration Reduction."

7.      On information and belief, DJI's citation of the '161 Patent and the '090 Patent as material prior art required DJI to review those patents, including their claims, and assess their relevance to DJI's own technology.  The applications in which DJI cited those patents were directed to the same field of technology as the Asserted Patents, including gimbal stabilization, camera orientation control, and image-capture systems.  Accordingly, DJI was aware not only of the existence of the '161 Patent and the '090 Patent, but also of the relationship between the claimed inventions and DJI's own technology.  On information and belief, DJI knew, or at a minimum subjectively believed there was a high probability, that the Accused Products practiced one or more claims of the '161 Patent and the '090 Patent when DJI cited those patents, but nonetheless continued its infringing conduct.

8.      On June 4, 2026, before filing this action, Insta360 provided DJI with written notice identifying each of the Asserted Patents and offering DJI an opportunity to obtain a license on commercially reasonable terms.  DJI refused to accept a license, leaving Insta360 with no alternative but to seek judicial relief to protect its intellectual property rights.

9.      DJI has therefore had knowledge of the '161 Patent and the '090 Patent, and knowledge that its products infringe those patents, or was willfully blind thereto, since at least August 31, 2017.  With respect to the '910 Patent, DJI has had knowledge of that patent and knowledge that its products infringe the '910 Patent, or was willfully blind thereto, since no later

than June 4, 2026.  At a minimum, DJI has had knowledge of each of the Asserted Patents and of its infringement thereof since the filing of this Complaint. DJI's continued infringement after acquiring such knowledge has been, and continues to be, willful, wanton, deliberate, and intentional.

## THE PARTIES

10.    Plaintiff Arashi Vision Inc. (d/b/a Insta360) ("Arashi Vision") is a publicly traded company incorporated in the People's Republic of China, with its registered address at Room 1101, 1102, 1103, 11th Floor, Building 2, Jinlitong Financial Center, 1100 Xingye Road, Haiwang Community, Xin'an Street, Bao'an District, Shenzhen, China.

11.    Plaintiff Yilu Gaofei (Shenzhen) Technology Co., Ltd. ("Yilu Gaofei") is a corporation organized and existing under the laws of the People's Republic of China, with a principal place of business in Shenzhen, Guangdong, China.  Yilu Gaofei is a wholly-owned subsidiary of Arashi Vision.

12.    Upon information and belief, Defendant SZ DJI Technology Co., Ltd. ("SZ DJI") is a corporation organized and existing under the laws of the People's Republic of China, having its principal place of business at T2 Lobby, DJI Sky City, No. 53 Xianyuan Road, Xili Community, Xili Street, Nanshan District, Shenzhen, Guangdong, China.  Upon information and belief, SZ DJI conducts business, directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States.  SZ DJI's business includes, but is not limited to, the research and development of products imported and/or sold in the United States, including the Accused Products (as defined below).  Upon information and belief, SZ DJI directs and controls the development, manufacture, marketing, importation, distribution, and sale of DJI products, including the Accused Products, through its affiliated entities and subsidiaries.

13.    Upon information and belief, Defendant SZ DJI Osmo Technology Co., Ltd. ("DJI Osmo") is a corporation organized and existing under the laws of the People's Republic of China, having its principal place of business at DJI Sky City, T1-23F-S11, No. 55, Xianyuan Road, Xili Community, Xili Street, Nanshan District, Shenzhen, Guangdong, China.  Upon

4
COMPLAINT

information and belief, DJI Osmo is a controlled affiliate within the DJI corporate group and a subsidiary of SZ DJI.  Upon information and belief, DJI Osmo develops, commercializes, markets, and supports Osmo-branded cameras, mobile gimbals, and RS/Ronin stabilization products, including the Accused Products.  Upon information and belief, DJI Osmo participates in the development, commercialization, marketing, and sale of the Accused Products in the United States, including products that practice the technologies accused herein.

14.    Upon information and belief, Defendant DJI Europe B.V. ("DJI Europe") is a Dutch corporation with its principal place of business located at Bijdorp-Oost 6, 2992 LA Barendrecht, Netherlands.  Upon information and belief, DJI Europe conducts business, either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States, including but not limited to, the sale of products, including the Accused Products (as defined below).  DJI Europe facilitates the global distribution of the Accused Products, including their importation into the United States.

15.    Upon information and belief, iFlight Technology Company Limited ("iFlight") is a Hong Kong SAR corporation with its principal place of business located at Units 915-916, 9/F, Building 16W, Science Park West Avenue, Phase Three, Hong Kong Science Park, Pak Shek Kok, New Territories, Hong Kong SAR, China.  Upon information and belief, iFlight is SZ DJI's parent company and conducts business, either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States.  Upon information and belief, iFlight participates in the ownership, management, distribution, commercialization, and sale of DJI products, including the Accused Products, and directs and controls, or has the right to direct and control, the activities of its affiliated DJI entities.

16.    Upon information and belief, SZ DJI and iFlight direct and control the operations of the DJI corporate group, including DJI Osmo and DJI Europe, and the research, development, manufacture, marketing, importation, distribution, and sale of the Accused Products.  Upon information and belief, DJI Osmo and DJI Europe are controlled affiliates within the DJI

corporate group, and each Defendant acts in concert with, and for the benefit of, the other Defendants in carrying out the accused activities alleged herein.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.     This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Long-Arm Statute of the State of Texas.  On information and belief, each Defendant has purposefully availed itself of the privilege of conducting and soliciting business within Texas and within this District, including by engaging in and supporting infringing activities in Texas and within this District, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the United States Constitution and such that the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

19.     On information and belief, Defendants, directly or through their partners, intermediaries, distributors, and/or authorized retailers, purposefully and voluntarily place the Accused Products into the stream of commerce of the United States, with the intention and expectation that those products will be purchased and used by consumers in Texas and in this District.  On information and belief, the Accused Products have been sold to and used by consumers and entities within this District.

20.     **Direct online sales to consumers in this District**.  DJI has operated an Internet website at https://www.dji.com/, which is available to and accessed by users, customers, and potential customers within this Judicial District.  DJI also has operated an online store at https://store.dji.com through which products, including the Accused Products, have been sold and shipped to consumers in this Judicial District.  Upon information and belief, DJI has official online stores with Amazon and eBay, both of which are available to and accessed by users, customers, and potential customers of DJI within this Judicial District.  *See*

https://www.dji.com/where-to-buy/.  Through its online store, DJI has sold and shipped the

Accused Products directly to consumers located in this Judicial District.



21.    **Authorized retail and reseller channels in this District**.  DJI has directed

consumers to authorized retailers and dealers through its website at https://www.dji.com/where-

to-buy/.  For example, DJI's list of authorized retailers included Walmart, Sam's Club, Target,

Best Buy, and GameStop—all of which maintain retail locations and/or online stores accessible

to consumers in this Judicial District.  DJI has had at least one authorized Enterprise Dealer in

Houston, Texas.

22.    Through Defendants' purposeful conduct directed at this District, the Accused

Products have been imported, offered for sale, and available for pickup at retailers in the Eastern

District of Texas.  For example, the DJI Ronin RS 5, DJI Osmo Pocket 3, and DJI Osmo 360 are

in stock and available for order and pickup at the Best Buy store located at 1751 N Central Expy,

McKinney, Texas 75070.

COMPLAINT



COMPLAINT



23.    **Ongoing marketing and support directed at U.S. consumers**.  DJI's marketing materials show that DJI intended to target U.S. consumers.  For instance, DJI's online store at https://store.dji.com/ provides options for U.S. consumers, including English-language options and prices in USD.  DJI continues to distribute applications to U.S. users through the Apple App Store and its own website, to push firmware updates to DJI products in the possession of U.S. consumers, and to maintain tutorials, user guides, and instructional materials accessible to U.S. users—including users in this Judicial District.  Upon information and belief, DJI also has employed individuals in Texas to assist with sales, demonstrations, testing, and training for use of and with its products in this District.

24.    **Prior litigation in the U.S. and this District**.  DJI has submitted itself to personal jurisdiction in this District by filing suits against Insta360.  *See SZ DJI Tech. Co., Ltd. v. Arashi Vision Inc. d/b/a Insta360 et al.*, No. 2:26-cv-00462 (E.D. Tex.); *SZ DJI Tech. Co., Ltd.*

*v. Arashi Vision Inc. d/b/a Insta360 et al.*, No. 2:26-cv-00463 (E.D. Tex.).  DJI also has previously brought and defended multiple patent infringement suits in this Judicial District, demonstrating its submission to personal jurisdiction in the United States.  *See, e.g.*, *SZ DJI Tech. Co., Ltd. v. Irdeto B.V.*, No. 2:25-cv-01066 (E.D. Tex.); *Textron Innovations Inc. v. SZ DJI Tech. Co., Ltd.*, No. 2:22-cv-00351 (E.D. Tex.); *Cellspin Soft, Inc. v. SZ DJI Tech. Co., Ltd.*, No. 2:25-cv-00949 (E.D. Tex.); and *L4T Innovations LLC v. SZ DJI Tech. Co., Ltd.*, No. 2:26-cv-00187 (E.D. Tex.).

25.     On information and belief, Defendants have derived, and absent injunctive relief will continue to derive, substantial revenue from sales of DJI products in this District, including from sales and offers for sale of the Accused Products in the United States.

26.     In the alternative, this Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).  This is because: (a) the claims for patent infringement in this action arise under federal law; (b) Defendants are not subject to the jurisdiction of any state's courts of general jurisdiction; and (c) exercising jurisdiction over Defendants is consistent with the United States Constitution.

27.     Venue is proper in this District as to Defendants pursuant to 28 U.S.C. § 1391(c)(3).  Defendants are organized under the laws of foreign jurisdictions and are not residents of any judicial district of the United States.  As such, Defendants may be sued in any judicial district, including this one.  Defendants also have committed acts of infringement in this District by, among other things: (a) selling and offering to sell the Accused Products to consumers in this District through its website and its DJI Store; (b) selling and offering to sell the Accused Products through authorized retailers with physical and/or online presence in this District, such as Amazon, Best Buy, and B&H Photo; and (c) importing the Accused Products into the United States, which are then distributed to and sold within this District.

## THE ASSERTED PATENTS

### A.    U.S. Patent No. 8,938,161

28.    U.S. Patent No. 8,938,161, entitled "Method and System for Enabling Pointing Control of an Actively Stabilized Camera," was duly and legally issued by the United States Patent and Trademark Office on January 20, 2015, after a full and fair examination.  The '161 Patent was filed on March 14, 2014, as Application No. 14/214,471, claiming priority to Provisional Application No. 61/792,878, filed March 15, 2013.  A true and correct copy of the '161 Patent is attached hereto as Exhibit 1.

29.    The '161 Patent, among other things, provides "[a] method for adjusting a pointing angle of an actively stabilized camera." (Ex. 1, Abstract.)  The specification explains that prior stabilization systems "use motors to counteract any movement detected by motion sensors," but "the optical gyroscopic sensors tend to be large and very expensive." (Ex. 1 at 1:36–38.)  Moreover, "[t]o prevent the active stabilization system (gimbal) from moving, the camera operator needs to hold the joint angle at a zero value continuously," which "may be difficult to achieve in practice, and there are likely to be small angle errors requiring constant corrections," and "the quality of resulting video may suffer due to inadvertent movements resulting in the camera's pointing angle being changed unintentionally." (*Id*. at 19:48–55.) "Thus, it is desirable to provide a low-cost, lightweight stabilization system that can effectively remove unwanted movements, while also providing a level of control and flexibility to operators to easily and intuitively capture the footage they require." (*Id*. at 1:42–46.)

30.    The '161 Patent provides, among other things, a specific threshold-gated control method in which the active stabilization system is configured to stabilize the camera in accordance with a commanded pointing angle, and the system comprises a steering member rotatable around one or more of a pan axis, tilt axis, or roll axis. The method derives a joint angle measurement of the steering member associated with a rotational movement of the steering member, and adjusts the pointing angle of the camera, based on the derived joint angle measurement, in a direction of the rotational movement of the steering member, if the joint angle

measurement exceeds a threshold window.  As the patent explains, the threshold window "effectively sets a dead-band zone, in which the camera operator does not need to worry about accurate and consistent pointing" (Ex. 1 at 20:9-11), enabling the operator to "intuitively control the camera pointing angle in a smooth way and without sacrificing the benefits of active stabilization" (*id*. at 25:6-9).

31.     The claims of the '161 Patent are not directed to an abstract idea or any patent-ineligible concept.  For example, claim 1 recites a specific solution that allows an operator to adjust the pointing angle of the camera, based on a derived joint angle measurement, in a direction of the rotational movement of the steering member, if the joint angle measurement exceeds a threshold window.  The ordered combination of claim elements was not well-understood, routine, or conventional at the time of the invention, cannot be performed as mental steps by a human, and does not represent the application of a generic computer to any well-known method of organizing human behavior.  (*See, e.g.*, Ex. 1 at 1:21–46, 1:50–58, 5:27–6:44, 9:4–24; 10:62–11:52; 12:44–13:6, 18:1–52, 19:48-20:24.)

32.     Arashi Vision Inc. holds all right, title, and interest in and to the '161 Patent and possesses all rights of recovery thereunder, including the exclusive right to enforce the '161 Patent and to recover damages for past, present, and future infringement.  The '161 Patent is valid and enforceable under the patent laws of the United States.

**B.     U.S. Patent No. 8,908,090**

33.     U.S. Patent No. 8,908,090, entitled "Method for Enabling Manual Adjustment of a Pointing Direction of an Actively Stabilized Camera," was duly and legally issued by the United States Patent and Trademark Office on December 9, 2014, after a full and fair examination.  The '090 Patent was filed on March 14, 2014, as Application No. 14/214,517, claiming priority to Provisional Application No. 61/792,878, filed March 15, 2013.  A true and correct copy of the '090 Patent is attached hereto as Exhibit 2.

34.     The '090 Patent, among other things, provides "[a] method for adjusting a pointing direction of a camera housed by an active stabilization system" that "executes a

stabilization process to stabilize the pointing direction of the camera." (Ex. 2, Abstract.) The specification explains that because the active stabilization system continuously maintains a commanded pointing angle, any external force applied by the operator to physically repoint the camera results in the operator "fighting the stabilization process, which would otherwise have maintained the camera's pointing angle, bringing it back to the commanded pointing angle." (Ex. 2 at 25:8–11.) Changing the pointing direction therefore required "a remote operator . . . typically required for changing of the pan, tilt, and roll angles/rates of the camera" (*id*. at 17:45–47), with "[t]wo operators [who] must translate and point the gimbal (camera) simultaneously," requiring "careful collaboration between the camera operator and the remote operator" and "multiple radio transmitters, extra equipment, and resources" (*id*. at 17:49–55).

35.    The '090 Patent provides, among other things, a specific dual-loop control method in which the active stabilization system executes a stabilization process comprising an angle-based control loop and a rate-based control loop configured to receive a commanded angular rate from the angle-based control loop. The method detects an externally applied force, disables the angle-based control loop upon detecting a manual adjustment condition, adjusts the pointing angle of the camera in a direction of the externally applied force, measures the pointing angle of the camera, and re-enables the angle-based control loop to stabilize the pointing direction of the camera based on the measured pointing angle in response to detecting that the manual adjustment condition failed. As the patent explains, when the angle-based loop is disabled, "the camera is free to move in response to the force exercised by the camera operator." (Ex. 2 at 23:58–60.)

36.    The claims of the '090 Patent are not directed to an abstract idea or any patent-ineligible concept. For example, claim 1 recites a specific improvement that allows an operator to disable an angle-based control loop of a stabilization process upon detecting a manual adjustment condition, the stabilization process further comprising a rate-based control loop configured to receive a commanded angular rate from the angle-based control loop. The ordered combination of claim elements was not well-understood, routine, or conventional at the time of

13
COMPLAINT

the invention, cannot be performed as mental steps by a human, and does not represent the application of a generic computer to any well-known method of organizing human behavior. (*See, e.g.*, Ex. 2 at 1:22–47; 1:51–56, 4:52–6:2, 10:21–11:12, 17:41–18:13; 23:10–24:37; 24:63-25:19.)

37.    Arashi Vision Inc. holds all right, title, and interest in and to the '090 Patent and possesses all rights of recovery thereunder, including the exclusive right to enforce the '090 Patent and to recover damages for past, present, and future infringement.  The '090 Patent is valid and enforceable under the patent laws of the United States.

### C.    U.S. Patent No. 9,154,910

38.    U.S. Patent No. 9,154,910, entitled "Terminal Location Obtaining Method, Device, and System," was duly and legally issued by the United States Patent and Trademark Office on October 6, 2015, after a full and fair examination.  The '910 Patent was filed on September 30, 2013, as Application No. 14/042,445.  A true and correct copy of the '910 Patent is attached hereto as Exhibit 3.

39.    The '910 Patent, among other things, provides "a terminal location obtaining method" performed by a first terminal.  (Ex. 3, Abstract.)  The specification explains that prior methods relied on "the assigned IP address of the terminal, when connected to a network," to "determine the location of the terminal," but "the location of the terminal as determined by a corresponding server based on a particular IP address is a relatively large area," such that "the locations that can be determined for these types of terminals with no or relatively low-accuracy positioning capability are not accurate enough, which can affect certain location-based application operations."  (Ex. 3 at 1:25–37.)

40.    The '910 Patent provides a specific application-based method in which the first terminal starts an application comprising a function for obtaining, in a setting of the application, location information of a second terminal.  When detecting that the function has been switched on, the first terminal transmits a location-obtaining request to the second terminal so that the second terminal can obtain its current location information in response to the request and return

it to the first terminal; the first terminal receives the location information of the second terminal, uses it as location information of the first terminal, and performs a location-based application operation in accordance with the location information.  This method "can assist terminals with no or low-accuracy positioning capability to determine their locations, thereby obtaining relatively accurate location information of these types of terminals and performing corresponding location-based application operations"  and "can avoid inaccuracy issues when determining location based on the terminals' IP addresses and facilitate applications such as message push services based on accurate location information."  (Ex. 3 at 6:18–25.)

41.     The asserted claims of the '910 Patent are not directed to an abstract idea or any patent-ineligible concept.  For example, claim 1 recites a specific solution that allows a terminal to receive the location information of a second terminal and use the location information of the second terminal as location information of the first terminal.  The ordered combination of claim elements was not well-understood, routine, or conventional at the time of the invention, cannot be performed as mental steps by a human, and does not represent the application of a generic computer to any well-known method of organizing human behavior.  (*See, e.g.*, Ex. 3 at 3:7–15; 4:19–26; 4:41–5:34; 6:18–25; 7:40–8:55.)

42.     The '910 Patent is owned by Plaintiff Yilu Gaofei, and the assignment has been duly recorded with the United States Patent and Trademark Office.  Yilu Gaofei holds all rights, title, and interest in and to the '910 Patent and possesses all rights of recovery thereunder, including the exclusive right to enforce the '910 Patent and to recover damages for past, present, and future infringement.  The '910 Patent is valid and enforceable under the patent laws of the United States.

## THE ACCUSED PRODUCTS

43.     The products accused of infringement in this action (collectively, the "Accused Products") include, but are not limited to, the following categories of DJI products:

44.     Handheld Gimbal Products, including but not limited to, DJI Osmo Pocket 1, DJI Osmo Pocket 2, DJI Osmo Pocket 3, DJI Ronin, DJI Ronin-S, DJI Ronin-MX, DJI Ronin-M, DJI

RS 2, DJI RSC 2, DJI RS 3, DJI RS 3 Pro, DJI Ronin-SC, DJI Ronin 2, DJI RS 3 Mini, DJI RS 4, DJI RS 4 Mini, DJI RS 4 Pro, DJI RS 5, DJI Ronin 4D, DJI Osmo, DJI Osmo+, DJI Osmo Pro and RAW, DJI Osmo Mobile, DJI Osmo Mobile 2, DJI Osmo Mobile 3, DJI Osmo Mobile OM 4, DJI Osmo Mobile OM 4 SE, DJI Osmo Mobile OM 5, DJI Osmo Mobile OM 6, DJI Osmo Mobile OM 7, DJI Osmo Mobile OM 7P, DJI Osmo Mobile OM 8, and DJI Osmo Mobile SE, as well as related products, accessories, and mobile applications; and

45. Non-Gimbal Products, including but not limited to, DJI Osmo 360, DJI Osmo GPS Bluetooth Remote, as well as related products, accessories, and mobile applications.

46. Each Asserted Patent is infringed by the following categories of Accused Products: (i) the '161 Patent and the '090 Patent are infringed at least by the Handheld Gimbal Products (the "Accused '161 Products" and "Accused '090 Products") and (ii) the '910 Patent is infringed at least by the Non-Gimbal Products (the "Accused '910 Products").

## COUNT 1 — INFRINGEMENT OF U.S. PATENT NO. 8,938,161

47. Plaintiffs reallege and incorporate by reference the foregoing allegations.

**A.     Direct Infringement (35 U.S.C. § 271(a))**

48. DJI has directly infringed and continues to directly infringe one or more claims of the '161 Patent, including at least claim 1, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering for sale, and/or importing into the United States products that practice the inventions claimed in the '161 Patent without authorization.

49. The Accused '161 Products relate to actively stabilized camera systems configured to stabilize the camera in accordance with a commanded pointing angle, the systems comprising a steering member rotatable around one or more axes, and thereby practice the inventions recited in one or more claims of the '161 Patent, including at least claim 1.  For example, the Accused '161 Products derive a joint angle measurement of the steering member associated with a rotational movement of the steering member, and adjust the pointing angle of the camera, based on the derived joint angle measurement, in a direction of the rotational

movement of the steering member, if the joint angle measurement exceeds a threshold window. DJI has therefore infringed and continues to infringe the '161 Patent.  An exemplary claim chart identifying infringement of at least claim 1 is attached as Exhibit 4 and incorporated herein by reference.

### B.        Induced Infringement (35 U.S.C. § 271(b))

50.        DJI has induced, and continues to induce, infringement of one or more claims of the '161 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(b).  DJI has had knowledge of the '161 Patent since at least August 31, 2017, when DJI cited this patent in an IDS filed during prosecution of U.S. Patent Application No. 15/487,172, and in any event since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '161 Patent. DJI has had knowledge that the Accused '161 Products infringe the '161 Patent since at least August 31, 2017—when DJI's IDS filing required it to review the patent and assess its relevance to DJI's own technology in the same field—and in any event since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '161 Patent, and at a minimum since the filing of this Complaint.  In the alternative, DJI has been willfully blind to the infringement. DJI reviewed the patent when citing it in IDS filings during prosecution of DJI's own applications directed to similar technology—giving rise to a subjective belief of a high probability that DJI's products infringed.  Despite this belief, DJI took deliberate actions to avoid confirming infringement, including, on information and belief, maintaining a corporate policy or practice of not reviewing third-party patent claims for purposes of assessing infringement risk.

51.        With knowledge of the '161 Patent and of the infringement, DJI has actively induced infringement by providing product manuals, user guides, in-app guided workflows within the DJI application, tutorials, and marketing materials that provide specific instructions directing customers and end users to activate and operate the camera-pointing-control functionality of the Accused '161 Products in an infringing manner.  These instructions—such as those illustrated in the exemplary claim chart—affirmatively direct users to perform the specific

17
COMPLAINT

acts that constitute infringement of the '161 Patent, and DJI intends and has intended that its customers and end users perform those acts.

### C.    Contributory Infringement (35 U.S.C. § 271(c))

52.    DJI has contributorily infringed and continues to contributorily infringe the '161 Patent under 35 U.S.C. § 271(c).  DJI sells, offers for sale, imports, and/or supplies gimbal systems, controllers, firmware, and related functionality that constitute material parts of the inventions claimed in the '161 Patent and are incorporated into the Accused '161 Products.  DJI has known that the components and functionality incorporated into the Accused '161 Products are especially made or especially adapted for use in infringing the '161 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use since at least August 31, 2017, when DJI cited the '161 Patent in an IDS filed during prosecution of U.S. Patent Application No. 15/487,172, and in any event since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '161 Patent, and at a minimum since the filing of this Complaint.  In the alternative, DJI has been willfully blind to such infringement.

53.    Upon information and belief, the gimbal stabilization systems, controllers, firmware, and related functionality identified above are especially made or especially adapted for use in practicing the inventions claimed in the '161 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.  DJI contributes to infringement of the '161 Patent by, *inter alia*, promotion and/or sales of the infringing Accused Products and/or other components to third parties.

### D.    Willful Infringement

54.    DJI's infringement of the '161 Patent has been and continues to be willful.  DJI has had knowledge of the '161 Patent since at least August 31, 2017, when it cited the patent in an IDS during prosecution of U.S. Patent Application No. 15/487,172, and in any event since June 4, 2026, when Insta360 provided written notice identifying the '161 Patent and explaining how the Accused '161 Products satisfy claim 1.  DJI has known of the alleged infringement since at least August 31, 2017, and in any event since June 4, 2026, and at a minimum since the filing

of this Complaint.  Despite such knowledge, DJI has continued its infringing activities, including continued distribution of instructional materials, applications, and firmware updates that induce U.S. consumers to use the accused features.  DJI's continued infringement despite its knowledge of the '161 Patent and alleged infringement constitutes willful, deliberate, and conscious disregard of Plaintiffs' patent rights, warranting enhanced damages under 35 U.S.C. § 284.

55.    DJI's infringement of the '161 Patent is exceptional and entitles Insta360 to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

56.    Insta360 has been damaged by DJI's infringement of the '161 Patent and will continue to be damaged unless DJI is enjoined by this Court.

57.    Insta360 has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Insta360, and public interest is not disserved by an injunction.

58.    Insta360 is entitled to recover from DJI all damages that Insta360 has sustained as a result of DJI's infringement of the '161 Patent, including without limitation lost profits and not less than a reasonable royalty.

59.    Insta360 has satisfied all applicable requirements of 35 U.S.C. § 287.

### COUNT 2 — INFRINGEMENT OF U.S. PATENT NO. 8,908,090

60.    Plaintiffs reallege and incorporate by reference the foregoing allegations.

**A.    Direct Infringement (35 U.S.C. § 271(a))**

61.    DJI has directly infringed, and continues to directly infringe, one or more claims of the '090 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States products that practice the inventions claimed in the '090 Patent without authorization.

62.    The Accused '090 Products relate to camera systems housed by active stabilization systems that execute a stabilization process comprising an angle-based control loop and a rate-based control loop configured to receive a commanded angular rate from the angle-

based control loop, and thereby practice the inventions recited in one or more claims of the '090 Patent, including at least claim 1.  For example, the Accused '090 Products detect an externally applied force, disable the angle-based control loop upon detecting a manual adjustment condition, adjust the pointing angle of the camera in a direction of the externally applied force, measure the pointing angle of the camera, and re-enable the angle-based control loop to stabilize the pointing direction of the camera based on the measured pointing angle in response to detecting that the manual adjustment condition failed.  DJI has therefore infringed and continues to infringe the '090 Patent.  A claim chart identifying exemplary infringement is attached as Exhibit 5 and incorporated herein by reference.

### B.      Induced Infringement (35 U.S.C. § 271(b))

63.      DJI has induced, and continues to induce, infringement of one or more claims of the '090 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(b).  DJI has had knowledge of the '090 Patent since at least August 31, 2017, when DJI cited this patent in an IDS filed during prosecution of U.S. Patent Application No. 15/487,172, and in any event since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '090 Patent. DJI has had knowledge that the Accused '090 Products infringe the '090 Patent since at least August 31, 2017—when DJI's IDS filing required it to review the patent and assess its relevance to DJI's own technology in the same field—and in any event since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '090 Patent, and at a minimum since the filing of this Complaint.  In the alternative, DJI has been willfully blind to the infringement. DJI reviewed the patent when citing it in IDS filings during prosecution of DJI's own applications directed to similar technology—giving rise to a subjective belief of a high probability that DJI's products infringed.  Despite this belief, DJI took deliberate actions to avoid confirming infringement, including, on information and belief, maintaining a corporate policy or practice of not reviewing third-party patent claims for purposes of assessing infringement risk.

64.      With knowledge of the '090 Patent and of the infringement, DJI has actively induced infringement by providing product manuals, user guides, in-app guided workflows

within the DJI application, tutorials, and marketing materials that provide specific instructions directing customers and end users to activate and operate the Accused '090 Products in an infringing manner.  These instructions—such as those illustrated in the exemplary claim chart—affirmatively direct users to perform the specific acts that constitute infringement of the '090 Patent, and DJI intends and has intended that its customers and end users perform those acts.

## C.    Contributory Infringement (35 U.S.C. § 271(c))

65.    DJI has contributorily infringed and continues to contributorily infringe the '090 Patent under 35 U.S.C. § 271(c).  DJI sells, offers for sale, imports, and/or supplies gimbal stabilization systems, controllers, firmware, and related functionality that constitute material parts of the inventions claimed in the '090 Patent and are incorporated into the Accused '090 Products.  DJI has known that the components and functionality incorporated into the Accused '090 Products are especially made or especially adapted for use in infringing the '090 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use since at least August 31, 2017, when DJI cited the '090 Patent in an IDS filed during prosecution of U.S. Patent Application No. 15/487,172, and in any event since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '090 Patent, and at a minimum since the filing of this Complaint. In the alternative, DJI has been willfully blind to such infringement.

66.    Upon information and belief, the gimbal stabilization systems, controllers, firmware, and related functionality identified above are especially made or especially adapted for use in practicing the inventions claimed in the '090 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.  DJI contributes to infringement of the '090 Patent by, *inter alia*, promotion and/or sales of the infringing Accused Products and/or other components to third parties.

## D.    Willful Infringement

67.    DJI's infringement of the '090 Patent has been and continues to be willful.  DJI has had actual knowledge of the '090 Patent since at least August 31, 2017, when it cited the patent in an IDS during prosecution of U.S. Patent Application No. 15/487,172, and in any event

since June 4, 2026, when Insta360 provided written notice identifying the '090 Patent.  DJI has known of the alleged infringement since at least August 31, 2017, and in any event since June 4, 2026, and at a minimum since the filing of this Complaint.  Despite such knowledge, DJI has continued its infringing activities, including continued distribution of instructional materials, applications, and firmware updates that induce U.S. consumers to use the accused features.  DJI's continued infringement despite its knowledge of the '090 Patent and alleged infringement constitutes willful, deliberate, and conscious disregard of Plaintiffs' patent rights, warranting enhanced damages under 35 U.S.C. § 284.

68.     DJI's infringement of the '090 Patent is exceptional and entitles Insta360 to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

69.     Insta360 has been damaged by DJI's infringement of the '090 Patent and will continue to be damaged unless DJI is enjoined by this Court.

70.     Insta360 has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Insta360, and public interest is not disserved by an injunction.

71.     Insta360 is entitled to recover from DJI all damages that Insta360 has sustained as a result of DJI's infringement of the '090 Patent, including without limitation lost profits and not less than a reasonable royalty.

72.     Insta360 has satisfied all applicable requirements of 35 U.S.C. § 287.

### COUNT 3 — INFRINGEMENT OF U.S. PATENT NO. 9,154,910

73.     Plaintiffs reallege and incorporate by reference the foregoing allegations.

**A.     Direct Infringement (35 U.S.C. § 271(a))**

74.     DJI has directly infringed, and continues to directly infringe, one or more claims of the '910 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States products that practice the inventions claimed in the '910 Patent without authorization.

75.    The Accused '910 Products practice the inventions recited in one or more claims of the '910 Patent, including at least claim 1.  For example, the DJI Osmo 360, when paired with the DJI GPS Remote Controller, performs a terminal location obtaining method in which the camera (first terminal) starts an application comprising a function for obtaining, in a setting of the application, location information of the Remote Controller (second terminal); when detecting that said function has been switched on, transmits a location-obtaining request to the Remote Controller, so that the Remote Controller obtains its current location information in response to the request and returns it to the camera; receives the location information of the Remote Controller and uses that location information as the camera's own location information; and performs a location-based application operation in accordance with the location information (for example, by embedding GPS coordinates into recorded video file metadata).  DJI has therefore infringed and continues to infringe the '910 Patent.  A claim chart identifying exemplary infringement is attached as Exhibit 6 and incorporated herein by reference.

**B.    Induced Infringement (35 U.S.C. § 271(b))**

76.    DJI has induced, and continues to induce, infringement of one or more claims of the '910 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(b).  DJI has had knowledge of the '910 Patent since at least June 4, 2026, when Insta360 provided DJI with written notice identifying the '910 Patent.  DJI has had knowledge that the Accused '910 Products infringe the '910 Patent since at least June 4, 2026, and at a minimum since the filing of this Complaint and the accompanying claim chart.  In the alternative, DJI has been willfully blind to such infringement.

77.    With knowledge of the '910 Patent and of the infringement, DJI has actively induced infringement by providing product manuals, user guides, in-app guided workflows within the DJI application, tutorials, and marketing materials that provide specific instructions directing customers and end users to pair the DJI GPS Remote Controller with the camera, enable GPS functionality, and record GPS-tagged video—performing the methods claimed in the '910 Patent.  These instructions—such as those illustrated in the exemplary claim chart—

affirmatively direct users to perform the specific acts that constitute infringement of the '910 Patent, and DJI intends and has intended that its customers and end users perform those acts.

78.    DJI's inducing activities are ongoing.  For example, DJI continues to distribute firmware updates to the DJI GPS Remote Controller and Accused '910 Products in the possession of U.S. consumers that maintain the accused GPS geotagging functionality, and continues to host product tutorials and user manuals on its website accessible to U.S. users.

**C.    Contributory Infringement (35 U.S.C. § 271(c))**

79.    DJI has contributorily infringed and continues to contributorily infringe the '910 Patent under 35 U.S.C. § 271(c).  DJI sells, offers for sale, imports, and/or supplies the DJI GPS Remote Controller, firmware, and related functionality that constitute material parts of the inventions claimed in the '910 Patent and are incorporated into the Accused '910 Products.  DJI has known that the components and functionality incorporated into the Accused '910 Products are especially made or especially adapted for use in infringing the '910 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use since at least June 4, 2026, and at a minimum since the filing of this Complaint.  In the alternative, DJI has been willfully blind to such infringement.

80.    Upon information and belief, the DJI GPS Remote Controller, firmware, and related functionality identified above are especially made or especially adapted for use in practicing the inventions claimed in the '910 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.  DJI contributes to infringement of the '910 Patent by, inter alia, promotion and/or sales of the infringing Accused Products and/or other components to third parties.

**D.    Willful Infringement**

81.    DJI's infringement of the '910 Patent has been and continues to be willful.  DJI has had actual knowledge of the '910 Patent since at least June 4, 2026, when Insta360 provided written notice identifying the '910 Patent.  DJI has known of the alleged infringement since at least June 4, 2026, and at a minimum since the filing of this Complaint.  In the alternative, DJI

has been willfully blind to such infringement.  Despite such knowledge, DJI has continued its infringing activities, including continued distribution of instructional materials, applications, and firmware updates that induce U.S. consumers to use the accused features.  DJI's continued infringement despite its knowledge of the '910 Patent and alleged infringement constitutes willful, deliberate, and conscious disregard of Plaintiffs' patent rights, warranting enhanced damages under 35 U.S.C. § 284.

82.    DJI's infringement of the '910 Patent is exceptional and entitles Insta360 to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

83.    Insta360 has been damaged by DJI's infringement of the '910 Patent and will continue to be damaged unless DJI is enjoined by this Court.

84.    Insta360 has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Insta360, and public interest is not disserved by an injunction.

85.    Insta360 is entitled to recover from DJI all damages that Insta360 has sustained as a result of DJI's infringement of the '910 Patent, including without limitation lost profits and not less than a reasonable royalty.

86.    Insta360 has satisfied all applicable requirements of 35 U.S.C. § 287.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a) A judgment that DJI has infringed and continues to infringe, directly and indirectly (including by inducement and contributory infringement), literally and/or under the doctrine of equivalents, one or more claims of the '161 Patent, the '090 Patent, and the '910 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c);

b) A judgment and order finding that DJI's infringement has been willful;

c) A permanent injunction enjoining DJI, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with DJI from further infringement of the Asserted Patents pursuant to 35 U.S.C. § 283;

d) An award of damages adequate to compensate Plaintiffs for DJI's infringement, including: lost profits and/or a reasonable royalty pursuant to 35 U.S.C. § 284; and enhanced damages up to three times the amount found or assessed for DJI's willful infringement pursuant to 35 U.S.C. § 284;

e) A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

f) A judgment and order finding that this case is exceptional and an award of Plaintiffs' reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285;

g) An award of pre-judgment and post-judgment interest and costs; and

h) Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues raised by the Complaint.

COMPLAINT

Dated: June 11, 2026

Respectfully submitted,

/s/ Richard S.J. Hung
Richard S.J. Hung (California Bar No. 197425)
*Admitted to EDTX Bar*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268.7000
Facsimile: (415) 268.7522
Email:  rhung@mofo.com

Lily Yue Li (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: yli@mofo.com

Alex S. Yap (California Bar No. 241400)
*Admitted to EDTX Bar*
Ryan J. Malloy (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
Telephone: (213) 892.5200
Facsimile: (213) 892.5454
Email:  ayap@mofo.com
Email:  rmalloy@mofo.com

Claire Abernathy Henry
Texas State Bar No. 24053063
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (phone)
(903) 757-2323 (facsimile)
claire@millerfairhenry.com
www.millerfairhenry.com

*Attorneys for Plaintiffs Arashi Vision Inc. and
Yilu Gaofei (Shenzhen) Technology Co., Ltd.*

27
COMPLAINT